Next case we're going to hear is Lee v. Norfolk Southern Railway and Mr. Tucker will hear from you first. Thank you, Your Honor, and may it please the court and I appreciate your courtesies. Your Honors, I'm Bill Tucker from Birmingham, Alabama and Rachel Deckard. Excuse me, I represent Mr. C.T. Lee in this Federal Rail Safety Act whistleblower suit against his employer, Norfolk Southern. The Federal Rail Safety Act, or you'll hear it called FERSA, shorthand, was enacted by Congress to improve railroad safety. That's its basic purpose. If the court allows the district court's grant of the summary judgment on the issue of the election and remedies defense to stand, it will dramatically undermine the basic purposes of the FERSA, the Federal Rail Safety Act. The election of remedies defense does not prevent a railroad employee from, who has previously filed a section 1981 action, which is with Mr. Lee, from later pursuing a claim under FERSA for discrimination and retaliation are two separate acts. Those are two separate acts, 1981 and FERSA, and they are different evils to be prevented. And if we were to accept the reading of the appellee in this case, we would have to write out or amend the fourth prong, that is, for the same allegedly unlawful act the railroad carrier. So if they're two separate ones, it's not the same. Right? I believe I get where your Honor is heading, and that's correct. The law, FERSA, the plain meaning of it, we think, does not allow the railroad to interpose the election of remedies defense. It's the motivation that makes it unlawful. It's not the unlawful act. Same, the use of the word same is done on a purpose, or a purpose. We want to use every word that the Congress put in the act, and if they are allowed to we don't do a service to proper construction of this statute. And the plain language of the statute supports Mr. Lee's position. He has made out a prima facie case, and it should be sent back to the district court for a hearing on the merits. The district court granted some, when they granted some judgment on this issue, quoted Yogi Berra, that deja vu all over again. This is not deja vu all over again. This case addresses Federal Rail Safety Act illegal retaliation. The section 1981 addresses racial discrimination. Those are two completely different things. But all arising from the same set of facts, I guess that was the district court's frustration with this case, is that in the normal mind run of cases, the plaintiff would not be able to split his or her claims in this manner. But it's the nature of the statutory scheme that compels the result in this case. Is that your position? They are very different because of the construct around the Federal Rail Safety Act where you must go to the Department of Labor, and they are here today and will argue part of this also. And they have a process by which the agency, OSHA, which is designated to do the investigation, has 210 days and you're familiar with that part of this act. So they are different and they could have been put together if they had come together at the same time, but they did not. But the purpose of the act, and we should look at what is the context within which this is done, this law, the purposes of the act is to promote safety and the 07 amendment greatly liberalized that. And to allow this grant of summary judgment to stand would do great violence to the purposes of Congress in passing the law and the amendments. Now the position that the plain language of the statute... I thought your position was that even absent the amendments, there's no basis for reading subsection F to exclude your client's claims. Yes, sir. I agree. But in 07, the Congress amended the way that the law was done. It took it out of the Railway Labor Act, put it into OSHA, and I apologize, but that's what I was getting at. No, but your point is well taken on our position on that, but that's what I referred to. Now this position about allowing the motivation, that's the illegal act that we are talking about, that is the position that has been taken by the 7th Circuit in Reed, the 6th Circuit in the very recent case of Perez, the ARB, the Administrative Review Board in Mercier, the Federal Railroad Administration has set out in our brief and also the Department of Labor. All of those agree with our construct of this act. But if your honors decide that there is ambiguity, and sometimes when I was reading these briefs and you may have come to the same conclusion, sort of made my head hurt with all the English language, and these things can be complicated. I can understand how it got that way. But if you look at the legislative history, Mr. Florio was the manager of the act in the House and he also was the chairman of the subcommittee. Two other congressmen supported his position. And he very plainly said that this provision was for the purpose of ensuring that a railroad employee could not pursue an OSHA whistleblower claim under the OSHA law and the law then under the Railway Labor Act. And that was what they were doing. And that's what we have here under our contract. I see your red light, but I wanted to ask you a question. If we go along with you, there's still this question of what to make of the fact that he was before the court and claimed he had been discriminated against by reason of his race. That was the reason he was terminated. And in resolving that claim, this is what the district court said, there is no evidence that the suspension was imposed by McPherson and Hatcher due to anything other than the alcohol incident. Indeed, Lee has not presented any evidence that McPherson or Hatcher were even aware of the harassment. That's what the district court concluded and dismissed the case. The same termination, the same reasons come back and he says, oh, it wasn't for discrimination. It was because I was refusing to go along with the bad order slips on the cars. The railroad says there's some form of race judicata collateral estoppel, what do you say to that? We strongly disagree with that. We do strongly disagree with it. That issue was not before the court. Those are two different cases and again it goes back to the point about the two different wrongs. You're looking at the motivation for why he was suspended. And they adjudicate it. And the court says it's not harassment. The only evidence was that it was due to there was nothing due to anything other than the alcohol incident, his drinking. And while I don't know if that's a holding or a dictum, but it may be, but it's a little troubling that he goes to court and said I was suspended illegally because of A. And the court says not A, B. And then you come back again and say, hey, I was suspended because of C. Now that's, you know, double jeopardy in the criminal area and race judicata in the civil area all say you basically get one shot in court. That's the sort of the underlying policy of our legal system. And now we're giving this guy a second shot under totally different theory, totally foreign theory. Not foreign at the time because he had already made his claim to Oshkosh. And that was not pending before the court. In order to get double jeopardy under the criminal law system as I remember from my army days, that's the only time I was a prosecutor. Well, I didn't want to bring up the criminal law, but I was just noting that the double jeopardy has a policy of one shot. Prosecutor gets one shot. Yes, sir. But the one shot here was a claim based on race, not based on retaliation. What basis would the district court have had to even consider that as a separate basis? Well, the district court only, it was not necessary for the holding in that case. Right. And here Mr. Lee says there were multiple reasons I was fired. Race and whistleblower retaliation. He has the race claim before the district court. The whistleblower claim was before the OSHA still within the breast of the agency. So he had already made the fit together at the time, given the complexities of the OSHA and its investigation. And so in order to get the double jeopardy, the elements have to be the same. And here the elements are different. And the act of discipline. I'm thinking more of, you know, I understand what you're saying. But here a man comes in and challenges his suspension and said, I was suspended because of race. And the district court and the railroad comes in and said, we suspended you because of drinking. And the district court looks at the evidence and said, there's no other evidence than to support you were dismissed, suspended for drinking. Then he comes in and said, no, I was suspended for whistleblowing. Maybe there's a possibility of doing these things separate. But how do you say to an adjudicator, I was suspended because of A. That's the reason I was suspended. And then come in with a straight face and say, I was actually suspended because of C. Because I now lost on A. And the railroad says, of course, it's B. But I understand your position and it gets very complex in terms of. If I could answer, and there is one, your honor, under the law, this law says you cannot illegally retaliate. You cannot retaliate, take discipline and such. Such a discipline, such retaliation is based in whole or in part on your protected activity. And here. Shouldn't he have said something about that? He had already made his complaint to OSHA and it was still within that framework. This was not a new claim to anybody. In fact, when he was deposed, there was colloquy between counsel that we're not going to go into the OSHA whistleblower discrimination aspect of his claim then because it was still pending within OSHA and we all agreed to do that. And your honor, my time is up. Yeah, and you've got some time reserved. Yes, sir, I do. You're the only one. I think we're going to revisit that again. Mr. Lewis. Okay. This is right. Okay. My little chart has you coming in fourth, but you're going to go second. You're going to come second. Okay, fine. No, this is fine. We'll hear from you. Thank you. May it please the court. My name is Rachel Goldberg and I represent the Secretary of Labor as amicus in this case. The first is election of remedies provision is a very narrow one. It does not apply to statutory race discrimination claims such as here. Rather, it only applies to two different statutory schemes that protect safety or health-related whistleblowing such as whistleblowing under the OSHA Act. So it is meant to be a very narrow. Do you come to that conclusion by reading the statute or finding an ambiguity in going to legislative history? Well, we think that the statute is plain and this court can decide this issue on the plain language of the statute. But the legislative history, should the court find the language to be ambiguous, legislative history is particularly helpful here. Just to lay out a little bit more of the legislative history than is discussed in the briefing, it's important to note that in 1970 when FRSA was passed to protect, to increase railroad safety, there was no whistleblower provision included. That same year in 1970, the OSHA Act was also passed to provide for safety in other working contexts. It included a whistleblower provision. It also included section 4B1, which says that if another agency, federal agency, is actually regulating the safety standards in the workplace, then the OSHA Act would not apply. And in 1978, as opposing counsels referenced in their brief, the Federal Railroad Administration issued a policy statement in the Federal Register making clear that what they were going to regulate in terms of safety in the workplace were the operations on the rails, basically. And what they were going to leave to the OSHA Act and to the Department of Labor was safety in the shops, repair facilities, offices, the fixed working places. So it was clear from that policy statement that employees who were working on the rails were covered by FRSA, but they had no whistleblower protection because the OSHA Act 11C did not apply to them. So in 1980, Congress amended FRSA again to add a whistleblower protection provision for FRSA. It makes clear that the whistleblower provision was modeled after 11C. It was meant to extend the OSHA Act's whistleblower protections to railroad workers who had a provision. It would have been much easier if Congress just correlated the two statutes instead of us saying more broadly. You're helped out a lot if we find an ambiguity. If we don't find an ambiguity, you have a harder time, I think. But there might be some truth to that, I believe. And that points to actually a very interesting point, which is that it would be helpful if the election of remedies said you can't bring an action under FRSA or the OSHA Act. But the OSHA Act is a slightly unusual statute in that it provides that if states want to pass their own safety similar to the OSHA Act, their own statutes to protect workplace safety, then employees can bring whistleblower actions under those. Well, your point is that they had to speak more broadly in order to get the state action. Exactly. There are currently 22 states which have state OSHA plans. So the election of remedies provision would have to enumerate all of those, which would be untenable because that can also change over the years. So it necessarily needed to be more broadly written. But that doesn't mean it applies in a broad sense. It applies very narrowly to safety or health security-related whistleblowing claims. And I think the legislative history is very illustrative. You take the position that it also works with one other federal statute? Yes, the National Transit System Security Act, which was passed at the same time that FRSA was amended in 2007. It also contains the same. And it covers similar workers who could actually bring claims under both, like commute railroads. Those employees could bring claims under both FRSA or the NTSSA. And so the election of remedies would apply to that as well, to those claims. So does it come down to how we read the same allegedly unlawful act? I think that is the key phrase. You can look at the whole phrase in the election of remedies provision. But that phrase, same allegedly unlawful act, I think Judge Floyd, you were right on target with Norfolk Southern and the district court want to read the word unlawful out of that statute. That is a modifier, same unlawful modifies act. So the adverse action or unfavorable personnel action that the employee is subjected to has to be the same unlawful act, same unlawful for the same reason, same whistleblowing reasons. And race discrimination obviously is a completely different unlawful act than a whistleblower retaliation claim or action. Norfolk Southern's interpretation of this provision would dramatically limit employees in the railroad industry the ability to bring multiple claims, unlike employees in most other industries. And one point actually that might be helpful for the court to know is that OSHA administers lots of whistleblower statutes, many of which contain a similar kickout provision, which is what we refer to when you can leave the administrative adjudication process and go to district court if it is taking too long. And none of those statutes contain election of remedies provisions. But what often happens is an employee will kick out to a district court and then join the employee might have already brought other claims and those cases will be consolidated. So then you might have a race discrimination claim and a Sarbanes-Oxley whistleblower accounting fraud claim. And they might be consolidated into one case. And that would be a more natural, I mean, probably more advantageous to the employee manner to adjudicate it because you're having all the issues resolved in one case rather than having potential collateral estoppel applying later on. So that is what happens in frequently in whistleblower cases and could certainly happen in FRISA cases. There's no reason why that couldn't happen here. So there isn't, doesn't necessarily have to be many consecutive litigation. You can have it all consolidated into one. It's complex sometimes when you go to different agencies. Yes, EEOC, yes. It is. It is complicated. But the OSHA process is meant to be an informal, at least in the beginning, an informal process which pro se complainants are meant to be able to take advantage of. So to, as the district court would have it, that the employee should file the FRISA complaint first and then perhaps later be able to file a race discrimination claim would require a familiarity with kind of sequencing of your legal claims that most pro se complainants are probably not aware of and would not work very well for that system, for the way it's intended. If the court has any other questions, thank you very much. Thank you, Ms. Goldberg. Now do we hear from Mr. Lewis? Is that the next? All right. Thank you. Good morning. May it please the court. My name is John Lewis and I represent the affiliate Norfolk Southern Railway Company. I would just note that I am splitting my time with the Amicus Association of American Railroads. But having said that, we believe that the plain language of these statutes, the Federal Railroad Safety Act, based upon an analysis of the history of Section 20109 from 1980 to 2000, and looking at the scope of Section 1981 as amended in 1991, essentially resolves the case. Why do I say that? And for the benefit of the court, I would just note that attached to our Rule 28J letter, we did prepare a listing of the changes in FERSA, and in particular these provisions, from 1980 to the present, so that the court or the court's clerks can see. Because we think there was some confusion in prior rulings based on understanding of changes in FERSA that had no substantive impact, and then other changes that did. And one, for instance, is the current version of Section F, which says that an employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act. That provision, among others, was a non-substantive revision in 1994. The original version in 1980 didn't use the word another. And a number of courts, now these other courts were looking at situations where collective bargaining agreement was being enforced under the Railway Labor Act. So a little bit different fact pattern, but they looked at that word another. Didn't we have that situation in this case that you moved to summary judgment and that it should have been dealt with in the collective bargaining agreement? Well, as a number of the courts have found, based on their interpretation, which we agree with, relying on the collective bargaining agreement, even when it was enforced pursuant to Railway Labor Act, didn't qualify for the election of remedies provision, Your Honor. But didn't you move for summary judgment on the basis that you claimed that this case should have been resolved under the collective bargaining agreement by arbitration? In that representation, you made it clear. Well, there was an argument, I believe, that was made about whether there was a minor dispute. And therefore, that and the minor dispute would stem from Mr. Lee's citation of part of the collective bargaining agreement. But the judge said, yes, OK, that may be a minor dispute. That is a minor dispute. But I'm going to look separately at the race discrimination allegations. And based on my review of the record, I do find, I should say, a violation. If I'm understanding you, Your Honor. Well, I thought the case was dismissed because it should go to arbitration. No, Your Honor. Now, the initial case, the judge looked at two things, at least two things. One, there was the allegation that at least a portion of it was a minor dispute under Railway Labor Act preempted because it required review of the pertinent provisions of the collective bargaining agreement. But the court then said, I could be wrong because there are other decisions. I know there are Seventh Circuit decisions and other jurisdictions that say, no, an individual may have a separate race discrimination claim. And even though he is alluding to some things that he believes support it, it's not totally preempted by the Railway Labor Act. Having done that, our judge in this case properly said, and I've examined those, and I don't believe those have merit and granted summary judgment. So we believe that, indeed, he looked at the merits and he said, this particular case, this judgment based on race discrimination allegations under Section 1981 is insufficient. Getting back to my point about the language, the Rattledge versus Norfolk Southern case, the 2013 one, based its holding on the language that talked about another. A number of courts have kind of struggled in these cases to find a basis, to find the meaning. Let me ask you this. Let's give you the full benefit of any argument about the word another, meaning any other. It's still limited by the four words for the protection, same allegedly unlawful act. And regardless what the breadth of statutes it looks like, it refers to all statutes, but they are limited by seeking protection for the same allegedly unlawful act. And isn't that really where the issue is here? Well, we believe, Your Honor, that the act, the same allegedly unlawful act for one thing is looking to the alleged FERSA violation. But to directly answer your question, we believe the only proper meaningful construction of that language is the immutable personnel outcome, the objective act. So in this particular case, it's Congress's attempt to say why the guy was put out of the company. If a company terminates its distributor because the distributor disparaged the company's trademark, and another company distributor is terminated because the distributor didn't agree with the prices set by the manufacturer, are the two terminations the same? One for trademark disparagement and the other for antitrust, for failing to follow the prices? Well, I would say that they are and they aren't. And I think to bring this back to our case, we're talking about for a second, you say, yes, they're both terminated. They're both terminated. So in that respect, yes. And applying it to this statutory construction, yes. Because otherwise, then we're getting into complex slicing and dicing of potential motivations. Except if that makes a distinction for acts, unlawful acts, then it seems to me there may be an ambiguity to find out what did Congress mean by the same allegedly unlawful act. And my only point is, and I took this up a little bit with Ms. Goldberg, if this is ambiguous, there's a pretty good history for a lot of reasons on what this is all about. If we are focusing just on the language, maybe same modifies unlawful act or does same just I guess you say same just modifies act. We say essentially all three refer to and Ms. Goldberg says from a former laborer says same modifies unlawful act. Keeping the two together sort of almost hyphenated. And does this mean we have an ambiguity? Well, we believe it isn't. We believe that based on the language and the way the language has been historically interpreted, the Serrata versus BNSF case, it's a 2005 case, but it interpreted saying it's addressed not to the character or motivation of the employees allegedly unlawful act, but the act itself. We believe if one buys into the mens rea, if you will, the mental. Let's stay away from the mens rea. Let's go back to the language and say the same unlawfulness of the act. In other words, that's what the position if you put unlawful hyphenated act, then it would have to be an act that's unlawful for the same reason. Safety is the argument they say. Your argument is that you can't link unlawful act that closely and that same act, an unlawful act, a parallel adjectives that modify act, and therefore, the same act refers to termination. That's correct, Your Honor. Otherwise. Why aren't both those interpretations plausible? Well, because we think, again, looking at the way one court has interpreted and looking at the plain language, to pick the other construction would then require the court to try to determine, does this statute that we're particularly talking about, was the motivation for the act based on this intent or whether it was something else if we're talking about the act? Because nothing is crystal clear. Other statutes that you might say have some safety content also get involved in issues such as misuse of funds. Failure to use funds in a proper way. So not only are we going to have to say, and that's a statute that was alluded to earlier, the National Transportation System Security Act. You then have to decide, OK, the law might be applicable. It might be appropriate for the election of remedies. But then we've got to parse the language and see whether this subset of that is sufficient. And we think that the plain language indicates that really what Congress is doing is trying to limit it and trying to, in return for the benefits. This guy's a consummate whistleblower. He whistleblows because they filed an illegal Medicare claim on his behalf. And he files one because he whistleblew because of the bad railroad car, the safety issues. And he whistleblew because of some other reason. Does that mean he has to pick one of the statutes? He, for instance, for a fraudulent Medicare claim on his behalf? Well, if he's going to start with another statutory claim and then move to FERSA, the answer- He has both. And FERSA requires him maybe to go this agency and he has to go to that agency. I guess the point I'm making is you first look at it, the district court read it fairly straightforward and broadly. But when you look at it a little closer, it has a few prickles on it. Well, both complaints- I mean, there were two complaints. Factually, they were virtually identical. The only difference, and this is the problem that I pointed out, is the alleged motivation. And then if one looks at the factual allegations, they're overlapping. Some of which, these tag orders, bad car orders, he alleged people took adverse action against him because he was saving those. And so he's entwined race, retaliation, and despaired treatment because of race together. So I think this case illustrates- If the railroad's conduct is unlawful under two different statutes, this could be read to mean the same unlawful act. You can't- he has to pick. In other words, if you look at the legislative history, maybe OSHA and Railroad Act claims. You can't take both because they both regulate safety. That's basically the government's position. You could certainly argue, Your Honor, and I know my time is up, that if he was terminated appropriately in the first action, how can he have a second action? So I think- I mean, how many times does one get to do it over? Mr. Tucker made clear that he had his agency claim pending while he had his 1981 claim pending in a different form. He had to go two different forms. Well, but I don't think that that makes him immune from the operation of the statutory election of remedy provision. He didn't have to file the section 1981 claim, which clearly covers retaliation in his very broad base. He didn't have to do that. Instead, he- Or retaliation for racial discrimination, which is- Right. In order to further Congress's policy against discriminating against race. But Congress also has a policy to protect railroad cars, and so he's claiming that both of them came into play with respect to him, and he pursued both remedies in different forms. But Congress devoted considerable resources to FERSA and to the administrative provisions. So one of the things that comes from it is to speedily attempt to speedily resolve these claims. To the extent that this is going to be the process- At the expense of abridging the rights of railway workers where any other worker would be able to file separate claims and pursue separate claims. I mean, what- that doesn't make any sense. Well, it- because the railroad workers certainly have rights that not everyone else has. They have the right to file, you know, FELA claims in these cases based on these decisions. They have a right to prosecute claims or grievances under the collective bargaining agreement, and they have the right to pursue some other claim and or FERSA. They just can't do it all, so- I have just always observed that the most complex relationship in human history is the employer-employee relationship in the United States. It's got about, what, 50 statutes that apply and then the common law. Those very- Our time's up. Yes, thank you. Thank you, Your Honor. All right, Mr. Monroe. Good afternoon, Your Honors. Donald Monroe. I represent the Association for American Railroads. The industry's purpose of being here is to address the government's overly narrow interpretation of subsection F, and I'd like to go directly to the plain language debate that the Court was having a moment ago, because I think it's telling that when the Court asked a government counsel, do you rely on plain language for legislative history? She said plain language, but then immediately spoke about the legislative history, because- I took her position to mean that we read it the way we read it, but if you don't read it the way we read it, there's an ambiguity, and we rely on legislative history, which supports the way we read it. Well, actually- I think that's her argument. Now, you can take it on, but- I will try to do that, Your Honor. With respect to the ambiguity point, there is no ambiguity in this language. The statute- and I agree, the statute refers to the same allegedly unlawful act. That is the key phrase that this Court needs to interpret, because I think, as counsel has already established, another provision of law supports our position. So, same allegedly unlawful act. What does that mean? Now, our position is that the only noun in that phrase, which is the subject of the sentence, is act, and act clearly refers to the kinds of prohibited conduct that are defined in threats, harassment. Those are acts. Now, the government's position is it has to be the same unlawfulness. Unlawful is not a noun. Unlawful is an adjective, and in my fourth grade grammar class, I was taught adjectives do not modify other adjectives. They only modify nouns. On that analysis, you got two adjectives, you have an adverb, and the adverb modifies the adjective, and you have one noun. Correct. And the conclusion you come to, a mechanical conclusion, is that same modifies the noun, and unlawful modifies the noun. Correct. They're in parallel, and you can look at them independently. But there is also a way to read the noun to include the word unlawful act, so that you have the same unlawful act, unlawful hyphen act, as the noun, combined noun, and it's not far afield to get to that. It's a natural reading. The same unlawful act is a little different from the same act. It has to be unlawful to be the same unlawful act, and that's a natural way to read it. Now, you get into the grammar. You know, we have government agent. How did we get a government agent under grammar? Government is a noun. Agent is a noun, and yet we use that as an adjective. And so it's not perfect. Nouns have adjectival forms as well. They do, but that's brand new. That's not a traditional grammar. But note here, in order to conclude that there's an ambiguity, in order to deposit the alternative phrasing that your honor is suggesting, you have to do something that is not in the statute. You have to insert a hyphen. Well, you do, but or you take out the word allegedly, which is not necessary. Allegedly is to protect. You don't want to draw the conclusion it's unlawful. So take the word allegedly out. You say same unlawful act. Same unlawful act is. Now, same unlawful act could be, you could focus on just the act, or you could focus on the same unlawful act. And I don't think it's a slam dunk in either direction, I must say. Just sounding it out with you. I know your position. Yes, I mean, our position is that you have to do violence. You have to change the words of the statute in order to reach their position. Let me give you an example. The statute also refers, and government points this out in their brief, uses the word violation. I would agree if the statute here in election of remedies said the same alleged violation, their position would be stronger. But it doesn't say that. It says act. And the reason why it's phrased this way is so that the Congress thought it didn't have to repeat this list of acts the statute refers to. So we're not omitting the words allegedly unlawful from our interpretation. We're just saying that the key words here are same act. But you know, you can reason with hypotheticals if you use the word same act. Leave out allegedly unlawful. The same act. You could get to some fairly absurd situations because the same act can be very evil in one sense and very moral in another. And you'd be combining those two. And it certainly might not read the way you would intuitively think of the same act as being. I was trying to give the hypothetical of a trademark violation and an antitrust violation. Both are arising out of the termination. Yeah. And the termination is a single same act. But one's legal and the other is illegal. And so you wouldn't preclude an antitrust suit because there was a violation or alleged violation of the trademark laws. Well, there's a further reason why our interpretation is the better one. And by the way, even if there is an ambiguity, we still win. Because this court does not owe deference to the Department of Labor, where at most it owes. No, they get skid more if it's reasoned position. Which Justice Scalia points out is no deference at all. Don't we owe deference to subsequent amendments to the statute? If we agree with you that the subsection F is unambiguous in isolation, don't the No. Which then suggests resort to the legislative district? No, Your Honor. I mean, G&H really say nothing about this at all. Because what G&H establish is that FERSA does not restrict the rights of employees under those statutes. F is about defining the scope of FERSA itself, which G&H obviously aren't speaking to. They're saying this is not taking away external rights, whereas F is defining the internal scope of FERSA. So, and it's perfectly, there's an easy way to rationalize G&H with F, which is you, Mr. Employee, retain all of your rights, but you have to make a threshold decision. And it's the reason we have to make a threshold decision is the reason that we pointed to in our brief, which is the claim splitting analysis that Your Honor referred to earlier. This is a situation where ordinary claim splitting rules don't function. Because of the administrative regime that counsel referred to earlier. So, it is. This guy had two vice presidents in the room. And they both say in unison, you're fired. Vice President A says, I've never liked blacks. You've never served us well. Because you're black, you're fired. Second vice president said, no, I don't agree with him. Blacks are fine with me. The reason I'm firing you is because you keep reporting these bad cars. And it's, you're making our transportation system fall apart. We don't have enough cars on the road. And then they both say, amen, you're fired. Now, does he have to make an election there? Yes, Your Honor. If the world were that simple, if these, I would be out of a job. Now, the fact of the matter is that ex-ante, you never have clear motives like that. They're alleged, they allege multiple- To create a hypothetical that puts the government's position in the forefront. The government's position is that it's got to relate to something safety oriented. Be the same unlawful act, keeping it together somewhat. Your argument is that the same act, an unlawful act, are parallel. And you look at them independently. And I was trying to focus on the termination, which is the same act. Yeah, that is- With a different motivation. That is, that's sort of the hardest case for us, right? Because you're positing a situation where there's this perceived unfairness. But consider the implication- Well, they're both unfair. Well, either reason would be illegal. Both vice presidents were wrong. Right. And they're both unlawful. But it wasn't the same unlawfulness. Correct. One was discrimination and the other was whistleblowing. Right. And under our interpretation, he gets to pick in that example. But under their interpretation, it's limited to a null set. It really is. I was having to pick not a diminishment of someone's rights under the law. Because that is an element of FIRSA. If FIRSA didn't exist at all, he would continue to have all of his panoply of remedies under ADA, Title VII, Section 1981, on and on and on. OK? So it's just about defining where FIRSA is going to fit into that universe of rights. And why doesn't it reasonably fit into a limitation on similar whistleblower statutes as opposed to the broader spectrum of other remedial statutes? Number one, plain language. Number two, what plausible reason would there be for Congress to want to limit other safety or security whistleblower actions but not other things? Remember, this is not a provision. Double recovery. Exactly. And if it were a double recovery provision, I would agree. But it is not. It is not a double recovery provision. It is a double litigation protection. If we find the language you've been talking about to be ambiguous, you said you'd win either way. But wouldn't you have to concede the legislative history supports the appellate? No, Your Honor. And here's why. They contradict themselves about the legislative history. In Mr. Florio's statement, he says, this is about 11C. But the government then goes on to say, well, not really. It's not just about 11C. There were other things as well. They concede the National Transit System Security Act. They concede state whistleblowers, none of which Representative Florio mentioned. So it had to be an example. Of course, except that act didn't come in until, what, 2007? Oh, the state whistleblower. And the only other acts that were existing at the time that there was some concern in the background were the state parallel acts that OSHA allowed. Which Representative Florio never mentions. So the legislative history doesn't support them at all. OK? And that's a little overstatement. Well, OK. It does not support them to the extent that they assert. And moreover, counsel referred to these state laws. Look at the state laws in the Fourth Circuit. None that would apply here. It's a null set. And the National Transit System Security Act, that applies to public transit agencies. So we're talking about something that's virtually inapplicable. We probably ought to submit this to three or four of our law schools for their legislative interpretation class and let them submit, each submit a statement as to what we should do in this one. But this has been interesting. Thank you, Mr. Monroe. We have Mr. Tucker back for a few minutes. Yes, Your Honor. Your Honor, to go back to the district court's opinion when he cited Yogi Berra, I've been listening to this and it occurred to me. Yogi also said, when you come to a fork in the road, take it. And you're wrestling with the fork of plain language and the fork of the legislative history. Let me ask you this. If we're talking about the same act, which is the termination of employment, his claim is for back pay and other things related to his termination. In both cases, right? The damages are different under the, you're talking about under 1981. 1980, termination under 1981 illegally and termination under. Under FERSA, the FERSA violation. The FERSA violation is a made whole. Allows for punitive damages of $250,000, attorney's fees, costs, a make whole. It's a very wide-ranging statute. How does that differ from the 1981? And I'm not a 1981 expert, but the law would not allow him to have a double recovery. There are ways that that could have been prevented. But he does have two cases. And no matter which of those two roads you take from Yogi's Fork, you come to the same place. This law is designed to protect railroad workers and make it safer. If he pursued his discrimination case and got a recovery for everything he asked for, and everything that he could claim under the Railroad Act, and now he's pursuing his Railroad Act claim, what would happen? Hopefully, I would get paid. And my cost. And because that law allows for... Yes, sir. Well, let's go back to the OSHA thing for a moment. I thought the parties agreed at some point that that OSHA claim was not right for litigation. And so therefore, he couldn't bring the FERSA. The OSHA claim, Your Honor, was pending before OSHA within the agency. And when we got to the deposition, I raised the issue. And Mr. McGinn, our learned opponent, I discussed it. And we came to a gentleman's understanding. We weren't going to do it. We were not going to go into it. And they didn't. And so that's where we sat. And we have alleged and we've argued that that's an estoppel. And because it wasn't ripe at the time to do it because it was still within OSHA. We all understood that. Everybody knew he had two different theories that all involved some same thing. But Your Honor, there were a lot of other things that were involved too. There was issues involving his seniority, involving his training and other things which were involved in the first case which are not involved here. The other thing in this case, the district court did not rule that he could not have both cases. They never rule that. If you read the district court's opinion, it says, it laid in the opinion that he had to do FERSA first. And so they wanted to say, can't do it at all. Well, that's because of the way it's phrased. You couldn't seek protection. Yes. And so if you sought protection from there first, there'd be no barrier since 1981 later. But I agree with Your Honor that the same unlawful act. And remember, Your Honor, if there are two reasonable ways that you can read a sentence like this, then you've got to look to the legislative history. And Representative Florio, Madigan and Gonzalez, and what they said in that legislative history is right on point. This provision is designed to prevent a railroad worker from seeking damages under the OSHA Act. And that's what it was all about. That's all it was about. It is very limited. And it's interesting also in Perez, which involved Norfolk Southern. What about the state acts that were? The state acts are gone. Y'all, this court ruled in Rainer versus Smurl. And I'm talking about back when they were drafting this stuff, what, in 70. And they're sitting there talking about it. You said they were only concerned about coordinating with OSHA. This was in 80 when Representative Florio was making his comment. They're trying to coordinate with OSHA. But yet they drafted it more broadly than just mentioning OSHA. And the government suggests that the reason they did that is because there were parallel state acts allowed by OSHA. There were a lot of them. And this court took one up in Rainer versus Smurl. In the Perez opinion, the court, the Sixth Circuit says, even Norfolk Southern admits that the Department of Labor's interpretation of the standard is entitled to be viewed as persuasive authority if not given Chevron deference. Well, that's not an issue here. Labor Department isn't the agency administering this act. Right? But the Department of Labor is, and OSHA, is where we have to go first in FERSA. Who supervises the Railroad Act? Federal Railroad Administration and the Department of Transportation. Yeah. But they gave it to OSHA, which is the repository of all the institutional knowledge of how all the whistleblower statutes should work. And that's why they've got it. You're really pushing it. Your Honor. Thank you very much. I would comment one thing about government agents. In some places, government might be a curse word. Your Honor, thank you for your attention. Thank you. We'll come down and greet counsel.
judges: Paul V. Niemeyer, Albert Diaz, Henry F. Floyd